[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-10142
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-0488-JB-MU

GEORGE HAWTHORN,

Plaintiff-Appellant,

versus

GEORGIA-PACIFIC BREWTON, LLC,
GEORGIA-PACIFIC, LLC,
GEORGIA-PACIFIC SEVERANCE PLAN FOR SALARIED EMPLOYEES,
LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 30, 2021)

Before NEWSOM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

George Hawthorn argues that his employer, Georgia-Pacific Brewton, LLC, and Georgia Pacific, LLC, terminated his employment so that he would not receive ERISA-governed severance benefits under the Georgia-Pacific Severance Plan when his position was later eliminated. He also argues that the Plan should have found him eligible for benefits and failed to afford him a fair process to petition for those benefits. The district court granted summary judgment in favor of Georgia-Pacific and the Plan. After careful consideration, we affirm.

## I. BACKGROUND

Hawthorn worked at Georgia-Pacific's mill in Brewton, Alabama for 39 years, the last nine of which he spent as a Shift Supervisor in the Utilities Department. In 2014, Georgia-Pacific developed a plan to increase the mill's efficiency by, among other things, cutting pay and restructuring certain positions in the Utilities Department. As relevant here, Georgia-Pacific planned to replace its five Shift Supervisor positions with two Unit Coaches. The Plan provides severance benefits to employees who are terminated because their position is eliminated. Accordingly, Shift Supervisors who were not selected for a Unit Coach position or offered another position in the mill would have been eligible for severance benefits under the Plan.

Georgia-Pacific did not designate a date that the Shift Supervisors' positions would be eliminated. By October 2016, one Shift Supervisor had quit, and his

2

position was not filled. The four remaining Shift Supervisors were Hawthorn, Thomas Cameron, Gerome Brackin, and Frank Grace.

As part of the same restructuring plan, Georgia-Pacific negotiated pay cuts for the hourly workers who Hawthorn supervised and assigned many of those workers to new jobs. These new pay rates were implemented in September and October of 2016. Although there was considerable confusion among the Shift Supervisors as to the new pay rates, Hawthorn understood that it was his job to determine the applicable pay rates for employees on his shift and, if he did not understand the rate of pay, to consult with the director of the Utilities Department or the HR manager.

An hourly worker named Lavon Bradley was employed in the Utilities Department during this timeframe. After a series of emails about his new pay rate, the HR manager informed the Shift Supervisors that Bradley was not eligible for a higher rate. Nonetheless, on November 30, 2016, Hawthorn approved a timecard for Bradley based on the higher payrate, which had been entered by Grace. Cameron noticed the error and told HR. HR interviewed Hawthorn, and he admitted that he had approved higher pay rates for hourly employees at their request.

HR undertook a payroll audit. This investigation revealed 28 occasions in October pay periods that Hawthorn had manually overridden the new lower rates of pay and allowed higher rates of pay for five employees. Based on the circumstances, HR employees concluded that Hawthorn approved these higher rates of pay even

3

though he knew that the pay was incorrect. Hawthorn concedes that he approved the wrong pay, but he denies doing so intentionally. He also asserts that Cameron made two pay code errors during this same period.

Georgia-Pacific terminated Hawthorn and Grace[1] in December, following the audit. They were not replaced. In Spring of 2017, Georgia-Pacific transferred Brackin to another position and filled the two Unit Coach positions with Cameron and an employee from another location.

Hawthorn filed a claim with the Plan for severance benefits in the amount of $88,000, which was denied. For the purposes of severance benefits, the Plan provides that an employee who is "involuntarily terminated by an Employer for Cause will not be eligible for benefits under this Plan either at the time of actual termination of employment or at his/her Termination Date." The Plan defines "termination date" for purposes of job elimination as "the date as of which the Employer determines that the job is ended or will end." The Plan administrator determined that, although Hawthorn's "position was in the process of being eliminated," Hawthorn was "terminated because of unacceptable conduct at work" before any termination date for his position had been established.

---

[1] The parties dispute whether Grace resigned or was terminated. Because this issue does not affect the result in this appeal, we assume without deciding that he was terminated.

4

## II. STANDARD OF REVIEW

We review a summary judgment *de novo* and view the facts in the light most favorable to the non-movant. *Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, 992 F.3d 1299, 1317 (11th Cir. 2021). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III. DISCUSSION

Hawthorn argues that the district court erred in granting summary judgment for three reasons. First, he argues that genuine issues of material fact preclude summary judgment on his claim for interference with ERISA benefits. Second, he argues that the Plan administrator erred in determining that he was ineligible for severance benefits. Third, he argues that the Plan administrator failed to fairly and fully investigate his claim before denying benefits. We address each argument in turn.

Hawthorn's claim for interference with his right to severance benefits arises under ERISA, which governs the Plan. ERISA prohibits an employer from discharging a participant in an employee benefit plan for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan. 29 U.S.C. § 1140. We apply the standard *McDonnell Douglas* burden-

5

shifting framework to this kind of claim. That is, a plaintiff must establish a prima facie case that he was terminated to interfere with his rights under the plan, then the employer must articulate a legitimate reason for its decision, and then the burden shifts back to the plaintiff to establish pretext. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993).

The district court correctly granted summary judgment in favor of Georgia-Pacific on this claim. We assume without deciding that Hawthorn has established a prima facie case that (1) "he is entitled to ERISA's protection," (2) he "was qualified for the position," and (3) he "was discharged under circumstances that give rise to an inference of discrimination." *Id.* But we conclude that he failed to rebut Georgia-Pacific's legitimate reason for his termination. Here, it is undisputed that Hawthorn made 28 errors in giving employees under his supervision higher hourly wages than they were entitled in the period immediately before his termination. These errors, whether dishonest or sincere, are a legitimate reason for his termination that have nothing to do with his potential eligibility for ERISA benefits.

In response, Hawthorn attempts, but fails, to establish pretext. Although he argues that his payroll errors were honest mistakes, Hawthorn cannot undermine the sincerity of Georgia-Pacific's view that Hawthorn knowingly approved the wrong pay. He compares himself to Cameron, who allegedly committed two hourly rate errors. But that comparison is unhelpful because Cameron and Hawthorn are not

"similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019). Cameron made considerably fewer errors, Georgia-Pacific was not aware of his two alleged payroll errors, and he was the one who reported Hawthorn's payroll error to HR in the first place. In any event, Hawthorn points to nothing in the record that would allow a reasonable jury to conclude that Georgia-Pacific's proffered reasons were merely pretext to interfere with Hawthorn's rights under the Plan.

As to Hawthorn's claim that the Plan administrator erred in denying his request for severance benefits, we also conclude that the district court properly granted summary judgment. In reviewing a plan administrator's benefits decision, we must first determine whether the administrator's decision is wrong under a de novo standard of review. *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Like the district court, we believe the plan administrator's assessment was correct. Under the Plan, Hawthorn was entitled to benefits only if he was terminated because his job was eliminated, and he remained eligible through his job's designated elimination date. Here, Hawthorn was terminated for cause before his position was eliminated as part of the mill's reorganization.

Finally, we conclude that the Plan administrator complied with ERISA's procedural requirements. Hawthorn argues that the administrator should have interviewed the individuals involved in his termination, took too long to rule on his

7

appeal, and should have included certain exhibits he filed in the administrative record. We disagree that these procedural failings undermine the fairness of the administrator's review. Nothing in ERISA requires a plan administrator to consider live testimony, instead of documentary evidence. And there is no reason to believe that Hawthorn was prejudiced by the length of the appeal or the administrator's oversight in failing to include certain materials in the record.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.